UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHOUA HER,<br><br>          Plaintiff,<br><br>     v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>          Defendant. | No. 1:19-cv-01111-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** |

## I.     Introduction

Plaintiff Phoua Her ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is now before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 20, 24, 28.  After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Plaintiff's appeal is therefore granted.

## II.     Procedural Background

On September 9, 2015 and October 20, 2015, Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively, claiming disability beginning March 12, 2009 due to major depressive disorder, insomnia, anxiety disorder, psychologic dyspareunia, lumbago, neuralgia, neuritis, radiculitis and left pelvic pain.  AR 24, 161–62, 176. The Commissioner denied the application initially on February 18, 2016, and on reconsideration

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

on May 3, 2016. AR 93–96, 121–22.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 5, 2018. AR 41–57. Plaintiff was represented by counsel at the hearing. AR 41. On June 22, 2018, the ALJ issued a decision denying Plaintiff's application. AR 24–36. The Appeals Council denied review on March 18, 2019. AR 10–15. On August 14, 2019 Plaintiff filed a complaint in this Court. Doc. 1.

### III.     Factual Background

#### A.     Plaintiff's Testimony

Plaintiff testified with the assistance of a Hmong interpreter. Plaintiff (born June 1972) lived with seven of her eleven children. AR 45. She had a driver's license and drove occasionally when not feeling depressed. AR 45. She sometimes needed reminders to take showers. AR 46. She did not do any household chores. AR 46. She sometimes went with her children to get food. AR 46. She visited the Fresno Center for New Americans once a week. AR 46. She didn't do much during the day but walked around the house or outside when she felt good. AR 46. Her medication sometimes made her feel drowsy. AR 46. She previously worked as a poultry cutter for Foster Farms. AR 47.

She suffered from pain in her neck and low back and numbness in her legs and hands. AR 47. Medication provided some relief from low back pain. AR 47–48. Walking caused the most pain. AR 48. To alleviate pain she took medication and went to sleep. AR 48. She also suffered from stomach pain which was resolved at one point but returned. AR 48. She had pain stemming from a previous hysterectomy. AR 48. She had two good days per week. AR 49. She could carry a gallon of milk. AR 49. She could sit and stand 20 consecutive minutes. AR 49. She could walk around the block before resting. AR 49.

Group therapy made her feel a little bit better but she felt the same once she got home. AR 50. They taught her coping skills but she couldn't remember them. AR 51. Her depression medication helped. AR 51. When her children weren't home to give her the medication she couldn't figure out which medication to take because she couldn't read. AR 51. Her pain was exacerbated by weather changes, particularly cold and rainy weather. AR 51. She had difficulty

bending down to pick something up and needed to take her time. AR 51–52. Her testimony was unclear as to whether she could walk on uneven surfaces. AR 52. She could not walk up a flight of stairs. AR 52. She had no friends who she saw on a regular basis. AR 52. Sewing used to be her hobby but she could no longer concentrate on sewing due to pain. AR 53. She struggled with depression and hopelessness. AR 53.

### B.      Vocational Expert

The ALJ questioned the VE regarding a hypothetical claimant with Plaintiff's vocational profile who had no exertional limitations but was restricted to simple, routine tasks. AR 55. The VE testified that such an individual could perform Plaintiff's past relevant work as a poultry eviscerater. AR 55. If limited to work at the medium exertional level, past work would still be available. AR 56. If the individual would be off task 25% of the day due to concentration issues, no work would be available. AR 56. Plaintiff's counsel added two hypothetical limitations: 1) the individual would miss four days per month; or 2) the individual would require one to two additional 15-minute breaks per day. AR 56. The VE testified that either one of those limitations would preclude past work. AR 56.

### C.      Consultative Examinations; Opinions; Prior Administrative Findings

Plaintiff's long-term treating physician, Dr. Gursahani, completed mental and physical medical source statements (MSS). AR 755–57; 750–53. On the mental MSS, Dr. Gursahani noted diagnoses of recurrent depression, anxiety, insomnia, pelvic pain and back pain. AR 755. She noted medication side effects of lethargy, dizziness, fatigue, upset stomach, nausea, nervousness, headache and memory problems. AR 755. She rated Plaintiff's mental functional abilities in 20 different areas on a scale ranging from category I (no performance preclusion) to category IV (precludes performance for 15% or more of an 8-hour work day). AR 755–56. She categorized 15 abilities as category IV, and 5 abilities as a category III. AR 755–56. She opined that Plaintiff's behavioral condition exacerbates her experience of pain. AR 756. She estimated Plaintiff would be absent from work 5 or more days per month due to her impairments and would be unable to complete an 8-hour work day 5 or more days per month due to her impairments. AR 756. She indicated Plaintiff was not a malingerer. AR 757. She based her opinion on Plaintiff's history and

medical file, progress and office notes, physical therapy reports, physical examinations and imaging. AR 757. She identified the onset date of Plaintiff's limitations as 2012. AR 757.

On the physical MSS, Dr. Gursahani noted diagnoses of depression, anxiety, insomnia, pelvic pain and back pain. AR 750. She noted symptoms of vertigo, depression, anxiety and restlessness. AR 750. She characterized Plaintiff's pain as sharp. AR 750. As to clinical findings and objective signs she noted limited range of motion. AR 750. She noted side effects of medication including drowsiness, dizziness and nausea. AR 750. She noted that emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations. AR 750. She further opined as follows: that Plaintiff could walk 2 city blocks without rest; could sit and stand for 45 consecutive minutes; could sit up to 6 hours a day; could stand/walk up to 2 hours a day; needed a job that permits shifting positions at will between sitting, standing and walking; needed to walk around for 10 minutes every 90 minutes; needed 10-20 minute unscheduled breaks every 1-2 hours due to symptoms of muscle weakness, chronic fatigue, pain/paresthesia's, numbness, and adverse effects of medication; needed to elevate her legs to 30 degrees 50% of the time while seated; could rarely lift 10 pounds; could never lift more than 10 pounds; could rarely twist, stoop, and climb stairs; could never crouch or climb ladders; would be off task 25% of a typical work day due to symptoms; was incapable of even low stress work due to worsening anxiety; and, would miss more than four days of work per month as a result of impairments or treatment. AR 751–53. She identified 2012 as the earliest date the above limitations would apply. AR 753.

Dr. Damania performed a consultative physical examination of Plaintiff on January 13, 2016 with the assistance of a Hmong interpreter. AR 568–72. He diagnosed back pain, abdominal pain and psychiatric issues. AR 572. He noted no tenderness to palpation in Plaintiff's back, negative straight leg raise test, no muscle spasm, and equal muscle tone throughout. AR 570. Her abdomen was soft, nontender without hepatosplenomegaly or masses. AR 570. Range of motion was within normal limits in Plaintiff's back, upper extremities and lower extremities. AR 571. Gait was within normal limits. AR 572. Dr. Damania identified no objective findings. AR 572. He opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, sit, stand and walk without limitation, and perform postural and manipulative activities without limitation. AR

572.

Dr. Michiel performed a consultative psychiatric examination of Plaintiff on January 30, 2016 with the assistance of a Hmong interpreter. AR 575–78. He diagnosed depressive disorder not otherwise specified. AR 577. He noted depressed mood, restricted/sad affect, no involuntary movements or specific mannerisms, normal speech, intermittent eye contact, no suicidal or homicidal ideation, goal directed thought process, non-delusion thought content, no response to internal stimuli, and that Plaintiff mentioned hearing voices and seeing shadows at night. AR 576. Plaintiff was oriented to person, place and year, but not day or month. AR 577. Her immediate recall, short-term memory and remote memory were fairly intact. AR 577. She did not know the name of the current president. AR 577. He opined Plaintiff was unable to carry out an extensive variety of technical or complex instructions, but otherwise had no limitations in her ability to adapt to work or work-like situations. AR 578.

As to Plaintiff's physical condition, non-examining state agency physicians K. Mauro and Martha Goodrich reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. AR 78, 88. Both concluded that Plaintiff had no severe physical impairments. AR 78, 88. As to Plaintiff's mental condition, non-examining state agency psychologists Preston Davis and Phaedra Caruso-Radin reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. AR 79, 89. Both concluded that Plaintiff had no mental impairments. AR 79, 89.

### IV. <u>Standard of Review, Generally</u>

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a

preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically

equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.     The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 12, 2009.  AR 26.  At step two, the ALJ found that Plaintiff had the following severe impairments: thoracic degenerative joint disease, cervical degenerative joint disease and major depressive disorder.  AR 28.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 29.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), but was limited to simple, routine tasks.  AR 30–35.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could perform her past relevant work as a poultry eviscerater.  AR 35.  Accordingly, the ALJ found that Plaintiff had not been under a disability since March 12, 2009.  AR 35.

## VII.    Issues Presented

Plaintiff asserts two claims of error.  First, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of her treating physician in favor of other opinions.  Second, Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her testimony.  Br. at 18.  Plaintiff contends these errors require remand for an award of benefits under the *credit as true rule*.

### A.     Rejecting Treating Physician's Opinions

1. **Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ

may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

Dr. Gursahani's opinions were contradicted opinions of a treating physician. As such, the ALJ was required to provide specific and legitimate reasons for rejecting them. *Lester*, 81 F.3d at 830. The ALJ provided the following reasoning for rejecting Dr. Gursahani's opinions:

> Dr. Pushpa Gursahani, MD, provided a physical medical source statement and a mental medical source statement on the claimant's behalf in June 2017 . . . I give this opinion little weight. The limitations suggested by Dr. Gursahani are far more severe than can be supported by the medical evidence of record, specifically the level of treatment sought and received by the claimant, the findings upon imaging and examination, and opinions of consultative examiners as discussed above.

AR 33 (citations omitted).

After introducing and summarizing Dr. Gursahani's physical and mental medical source statements (MSS), the ALJ provided a generalized critique, referring to both as "this opinion." The ALJ did refer back to previous discussions in her RFC analysis in which she provided additional detail. For the reasons explained below, the Court finds that the ALJ's RFC analysis as a whole provided sufficiently specific and legitimate reasons for rejecting Dr. Gursahani's physical MSS, but did not provide sufficiently specific and legitimate reasons for rejecting Dr. Gursahani's mental

9

MSS.

#### a. **Physical MSS**

First, the ALJ rejected Dr. Gursahani's opinions as unsupported by the "level of treatment Plaintiff sought and received." AR 32. The ALJ described Plaintiff's course of physical treatment earlier in her decision. As to Plaintiff's neck pain, headaches, back pain, and associated numbness and tingling, the ALJ noted that Plaintiff was "prescribed narcotic pain medication" but that "[t]he record contains no documentation that the claimant has sought or received treatment in the form of physical therapy or injection therapy, or that any surgical intervention has been recommended." AR 31. Although the ALJ did not explicitly describe Plaintiff's treatment as "conservative," that is the clear implication of her discussion, and it is also a specific and legitimate reason to reject Dr. Gursahani's physical MSS. *See Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (unpublished). Moreover, Plaintiff does not appear to contest the accuracy of the ALJ's implication as to the limited extent of her physical treatment, though she does contest that implication as to her psychiatric treatment. *See* Br. at 17–18 (stating that the ALJ erroneously implied that she received minimal psychiatric treatment, but not making the same contention as to physical treatment).

Second, the ALJ found Dr. Gursahani's opinions unsupported by imaging and examinations. AR 34. Earlier in her decision, the ALJ discussed unremarkable imaging of Plaintiff's pelvis, shoulder and scapula, unremarkable findings on consultative examination, but noted that imaging revealed cervical and thoracic spine abnormalities. *See* AR 27, 31, 33. Although Plaintiff's cervical and thoracic joint disease were found severe at step two, the ALJ determined that imaging and examination findings did not support work preclusive physical limitations. AR 34. This was a specific and legitimate reason to reject Dr. Gursahani's physical MSS. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Moreover, Plaintiff did not provide much discussion of the physical evidence of record that

might undermine the ALJ's analysis of Dr. Gursahani's physical MSS. Plaintiff's summary of the physical medical evidence of record identifies post-hysterectomy diagnoses of chronic pelvic pain, other pelvic and uterine abnormalities, and atrial tachycardia with palpations. Br. at 14. These records do not tend to support Dr. Gursahani's physical MSS. Although Dr. Gursahani's physical MSS reflects a diagnosis of pelvic pain, the post-hysterectomy records identified by Plaintiff are dated 2009, which substantially predates the earliest date Dr. Gursahani indicated Plaintiff's physical limitations would apply (2012). And, as noted by the ALJ, post-hysterectomy pathology results were normal and her pelvic CT scan was unremarkable. AR 27–28. She was treated for post-hysterectomy menopause, urinary tract infections and tested for STIs, though no cause was identified for her pelvic pain. AR 28. Plaintiff identifies no related records supporting a finding of limitations due to pelvic pain as opined by Dr. Gursahani. Nor does her diagnosis of atrial tachycardia with palpitations support Dr. Gursahani's physical MSS, as Dr. Gursahani mentioned no such diagnosis or any cardiac condition. AR 750.

Finally, the ALJ found Dr. Gursahani's opinions unsupported by the opinions of the consultative examiners. AR 33. The ALJ described the opinion of consultative examiner Dr. Damania, who opined Plaintiff could perform the full range of medium work, an opinion which the ALJ accorded significant weight as it was "consistent with the medical evidence of record, specifically the benign findings of imaging related to the claimant's allegations of back, neck, shoulder, and pelvic pain, as well as the level of treatment sought and received by the claimant over the relevant time period as discussed above." AR 33. The consultative examining opinion added additional support to the ALJ's decision to reject Dr. Gursahani's physical MSS. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding the ALJ provided specific and legitimate reason for rejecting the treating physician's opinions as unsupported by objective evidence and in conflict with consultative examining opinions, among other reasons).

### b. **Mental MSS**

As noted above, the ALJ offered the same reasoning for rejecting both of Dr. Gursahani's opinions without distinguishing between the two, namely that they were unsupported by the level of treatment, findings on imaging and examination, and the opinions of consultative examiners. AR 33.

As to the level of treatment Plaintiff received for mental health, the ALJ discussed that Plaintiff was treated with psychotropic medications and therapy. AR 31–32. She offered no qualitative description of that treatment history, nor did she offer any examples of treatment options an individual with allegedly disabling psychiatric limitations might have pursued, other than psychotropic medications and therapy.

Moreover, the ALJ's description of Plaintiff's course of treatment suggests an increasing level of treatment (increase in number of medications and dosage), with no concomitant reduction in symptoms. *See* AR 31–32. The ALJ's summary reflects that Plaintiff reported her medication was ineffective as of October 2013. AR 31. Her condition stabilized in 2014 after an additional medication was added. AR 32. Her symptoms worsened again in May 2015 requiring an increase in dosage. AR 32. Her symptoms worsened again in August 2015 requiring another increase in dosage. AR 32. The ALJ's summary concludes at that point with no indication that Plaintiff's condition was ever controlled. AR 32. Based on the treatment history as described by the ALJ, the ALJ's subsequent reference to "level of treatment" was not a specific and legitimate reason to reject Dr. Gursahani's mental MSS.

The ALJ also rejected Dr. Gursahani's opinions as unsupported by "findings upon imaging and examination." AR 33. First, there are no "imaging" findings related to Plaintiff's mental health diagnoses or treatment. As to examinations, the ALJ's discussion revealed substantially mixed evidence with no implication as to what the ALJ believed the evidence showed on balance. For

example, the consultative psychiatric examination revealed some objective findings suggestive of limitations (in contrast to her physical consultative examination, which revealed none), though other findings were not suggestive of limitations. She presented with depressed mood and restricted affect though her thought process was goal directed. AR 32. She reported hearing voices and seeing shadows at night though her thought content was otherwise non-delusional. AR 32. She was oriented to person and place but not fully oriented as to date. AR 32. The ALJ's summary of treatment records was similarly inconclusive. March 2015 treatment notes reflected flat affect and decreased psychomotor activity. AR 32. Group therapy records reflected improved self-regard and effective use of coping skills but continued depressive symptoms and difficulty remembering coping strategies at home. AR 32. The ALJ's interpretation of this mixed evidence was not sufficiently clear.

Moreover, the ALJ's summary of mental health treatment records was not entirely balanced. Plaintiff identifies numerous records not discussed by the ALJ. Defendant contends that Plaintiff primarily relies on subjective complaints rather than objective findings, with the exception of two occasions of flat affect and decreased psychomotor activity. Resp. at 11, Doc. 24. Notably, however, the ALJ did not distinguish between subjective and objective evidence of mental limitations, but cited both without noting which category of evidence was instrumental to her conclusion. Moreover, Plaintiff's mental health treatment records do in fact contain a mix of objective findings and subjective complaints not addressed by the ALJ. Many of those records addressed issues similar to those addressed by the psychiatric CE, Dr. Michiel.

For example, records reflect both self-reported poor hygiene (743) and objective presentation with poor hygiene (AR 416, 493, 618, 729). This tends to contrast with the psychiatric CE's objective findings that claimant presented with adequate hygiene. AR 577. Additionally, the psychiatric CE's notes reflect denial of suicidal ideation (AR 577), and the ALJ cited other records

reflecting the same (AR 369). However, numerous other records reflect suicidal ideation and past suicide attempts. AR 500, 537, 556, 562, 564, 565. A clinical health reassessment dated April 30, 2014 reflects ruminative/intrusive/disorganized thought process and a cognitive process characterized by irrationality, poor attention/concentration, slow processing, poor memory and impaired judgment. AR 499. That tends to contrast with the psychiatric CE's assessment of goal directed thought process and intact memory. AR 576–77. While the ALJ cited some records reflecting episodic crying only as a subjective symptom (AR 371), other records objectively reflect crying during examination (AR 343). The ALJ did not discuss these records.[2]

Finally, the ALJ cited the consultative psychiatric opinion in support of her decision to reject Dr. Gursahani's mental MSS. AR 33. Defendant contends that this opinion alone can constitute substantial evidence because it rests on the consultative examiner's own independent examination of the claimant. Resp. at 14 (citing *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). That may be true when the consultative examining opinion is the only examining opinion of record. However, the treating physician rule (still applicable to applications pre-dating March 27, 2017) would be a nullity if the mere existence of a contrary consultative examining opinion could serve as the "specific and legitimate" reasons the Ninth Circuit requires to reject a treating physician's opinion in favor of a consultative examiner's opinion.

Defendant identifies numerous other reasons he contends justify the ALJ's rejection of Dr. Gursahani's mental MSS, including: 1) that Dr. Gursahani was a family doctor, not a mental health

---

[2] Defendant contends that Plaintiff inappropriately relies on records predating October 20, 2015, records which Defendant contends are outside the relevant period. However, the ALJ's decision is rife with citations to records predating October 20, 2015 with little to no indication as to which records formed the basis for her conclusions. Moreover, even records predating the relevant period can potentially have some relevance (albeit limited relevance) to a disability determination. *See Robert M. v. Saul,* No. CV 18-6380-KS, 2019 WL 8163478, at *3 (C.D. Cal. Dec. 9, 2019) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008)). There is no reason to believe that the ALJ deemed any records to be excludable based on time period, and Defendant identifies no legal basis for the Court to make that determination for the first time on appeal.

professional, entitling her opinion to less weight than the psychiatric consultative examiner; 2) that Dr. Gursahani did not explain the objective findings supporting her check-box opinion; 3) that Dr. Gursahani did not check off the box stating that psychological evaluations and reports/opinions supported her opinion; 4) that Nurse Practitioner Lee, not Dr. Gursahani, completed most of the treatment notes and prescribed Plaintiff's medication; 5) that Nurse Practitioner Lee primarily performed physical examinations not mental status examinations; 6) that when she did perform mental status examinations, her findings were unremarkable; 7) that Plaintiff was not treated by a psychiatrist; 8) that there were no records of psychiatric hospitalization; 9) that 2016–2017 records reflect that Plaintiff's depression was controlled with medication or at least not worsening. Resp. at 9–12. These reasons do not warrant affirmance as none of these were even obliquely referenced by the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009). The ALJ's reasoning for rejecting Dr. Gursahani's mental MSS was not sufficiently specific or legitimate.

### VIII. Remand for Further Proceedings

For the reasons explained above, the Court finds that the ALJ's analysis of Dr. Gursahani's mental medical source statement was inadequate, and remand is therefore appropriate for appropriate consideration of the same. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Plaintiff's critique of the ALJ's reasoning for rejecting her subjective testimony focuses on her psychological impairment, not her physical impairments. Because remand is warranted in any event for proper consideration of Dr. Gursahani's opinion regarding the impact of Plaintiff's depressive disorder on her functionality, the Court declines to address the credibility of Plaintiff's testimony concerning the same.

Finally, Plaintiff contends that an award of benefits is warranted under the credit-as-true

rule. The *credit-as-true rule* applies when "1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, courts must "remand for further proceedings when, even though all conditions of the *credit-as-true rule* are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Here, remand for further proceedings is appropriate for proper resolution of the conflict between Dr. Gurshani's mental MSS and the other opinions of record.

**IX.     Order**

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Phoua Her and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **March 5, 2021**                    /s/ Gary S. Austin
                                                                   UNITED STATES MAGISTRATE JUDGE